## LEE HARDWARE CO. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. March 16, 1928.

No. 7916.

1. **Internal revenue ⬤➡38(16)—In suit to recover income and profits taxes paid under protest, reviewing court treats trial court's findings like jury's verdict (28 USCA § 41, par. 20).**

In action against United States to recover income and profits taxes paid under protest, in which jurisdiction is founded on 28 USCA § 41,

par. 20, and in which court sits as court of claims, reviewing court bases its action on findings of trial court, which are treated like verdict of jury; trial court being required by statute to sit without jury.

2. **Internal revenue ⬤➡38(16)—Action for income and profits taxes paid under protest will not be remanded for findings, in absence of dispute of fact (28 USCA § 41, par. 20).**

On review of judgment in action to recover income and profits taxes paid under protest, brought under 28 USCA § 41, par. 20, case will not be sent back for formal finding of facts, which trial court neglected to make, where briefs and argument clearly show that there is no dispute of fact in case; conflict arising purely from difference in views as to law.

3. **Internal revenue ⬤➡7(22), 9(27)—In computing income and profits taxes, "invested capital" held properly estimated by making deduction from investment in buildings for depreciation, notwithstanding increased value (Revenue Act 1917, § 207 [Comp. St. § 6336⅜h]; Revenue Act 1918, § 326 [Comp. St. § 6336⅙i]).**

In determining income and profits taxes, under Rev. Act 1917, § 207, 40 Stat. 300 (Comp. St. § 6336⅜h), and Revenue Act 1918, § 326, 40 Stat. 1057 (Comp. St. § 6336⅙i), "invested capital," represented by real estate with buildings thereon, *held* properly estimated by deducting 2 per cent. annually from investment in buildings for depreciation, notwithstanding that entire property had increased in value in amount at least equal to amount charged off as depreciation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Lee Hardware Company against the United States to recover certain income and profits taxes paid under protest. Judgment was entered, refusing recovery, except as to overpayments conceded by the United States, and plaintiff brings error. Affirmed.

Justin D. Bowersock, of Kansas City, Mo. (Bowersock, Fizzell & Rhodes, of Kansas City, Mo., on the brief), for plaintiff in error.

Al. F. Williams, U. S. Atty., and Alton H. Skinner, Asst. U. S. Atty., both of Topeka, Kan., and C. M. Charest, and T. H. Lewis, Jr., both of Washington, D. C., for defendant in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is an action at law by the plaintiff in error against the

United States to recover the income and profits taxes, paid under protest, for the years 1917 to 1920, inclusive. At the trial, defendant conceded certain overpayments arising from duplication on two items (equipment and automobiles) and concerning these matters there is no dispute here. The judgment refused recovery as to another character of item and that matter is brought here on writ of error.

[1, 2] Plaintiff in error presents only two contentions. The first is that it was the duty of the trial court to make findings of fact. The jurisdiction of the trial court in this character of cases is founded on section 41, paragraph (20) of USCA title 28 (Judicial Code, section 24, paragraph "twentieth"). In such cases, the court sits "as a court of claims." Fritch, Inc., v. United States, 248 U. S. 458, 461, 462, 463, 464, 39 S. Ct. 158, 159 [63 L. Ed. 359]. The above section requires that all suits thereunder "shall be tried by the court without a jury." The reviewing court bases its action upon the findings of the trial court which "are to be treated like the verdict of a jury." Brothers v. United States, 250 U. S. 88, 93, 39 S. Ct. 426, 428 [63 L. Ed., 859]. Obviously, the purpose of such findings is to present to the reviewing court the facts in the case to which the governing law is to be applied. Here there are no formal findings by the trial court. However, the briefs and argument are clear that there is no dispute of fact in this case. The conflict arises purely from a difference in views as to what is the law. In such a situation, it seems an idle thing to send the case back for a formal finding of facts about which no question is made here. Therefore, although the trial court should have made such findings we will not remand the case for that reason alone.

[3] The second and main contention is a pure question of law. Part of these taxes were assessed under the Revenue Act of 1917 (40 Stat. 300) and part under the Revenue Act of 1918 (40 Stat. 1057). This contention involves construction of section 207 of the Revenue Act of 1917 (Comp. St. § 6336-⅜h) and section 326 of the Revenue Act of 1918 (Comp. St., § 6336⅛ci) as to the meaning therein of the term "invested capital." There is no dispute here as to the amount of cash actually invested in the property, nor as to the surplus held, nor as to the tax, nor the amount of depreciation being within the amount of the existing surplus.

The portion of the invested capital here in question was represented by real estate with buildings thereon. In estimating the "invested capital," the taxing officials deducted 2 per centum each year from the investment in the above buildings for depreciation thereof. There is no dispute as to the fact of physical depreciation in such buildings nor as to the amount thereof as estimated by the officials. There is no dispute that the entire property (real estate and buildings) has increased in value along with other properties in that vicinity and because of natural growth in values and of improvement of other nearby property. Also, there seems no dispute that this increase in value is at least equal to the amount charged off as depreciation.

The taxpayer contends that where such appreciation in value exists it may be used to offset actual physical depreciation in so far as deductions for depreciation are allowable in ascertaining "invested capital" within the meaning of the above sections. To state the matter in different words, that the "invested capital" in the buildings "should be fixed at replacement cost less depreciation, not exceeding, however, the actual cost." If this contention be correct, the relief sought must follow because the protested taxes arose only as the result of depreciating the actual investment of capital in the buildings. The case of La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998, involved the precise matter here involved in regard to section 207 of the Revenue Act of 1917 (it is not suggested that section 326 of the Act of 1918 is, in this respect different). Therein the court said (page 387 [41 S. Ct. 530]):

"A scrutiny of the particular provisions of section 207 shows that it was the dominant purpose of Congress to place the peculiar burden of this tax upon the income of trades and businesses exceeding what was deemed a normally reasonable return upon the capital actually embarked. But if such capital were to be computed according to appreciated market values based upon the estimates of interested parties (on whose returns perforce the government must in great part rely), exaggerations would be at a premium, corrections difficult, and the tax easily evaded. Section 207 shows that Congress was fully alive to this and designedly adopted a term—'invested capital'—and a definition of it, that would measurably guard against inflated valuations. The word 'invested' in itself imports a restrictive qualification. When speaking of the capital of a business corporation or partnership, such as the act deals with, 'to invest' imports a laying out of money, or money's worth, either by an individual

in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains. See Webster's New Internat. Dict. 'Invest,' 8; Century Dict. 'Invest,' 7; Standard Dict. 'Invest,' 1."

Also at page 389 (41 S. Ct. 531):

"It is clear that clauses (1) and (2) refer to actual contributions of cash or of tangible property at its cash value contributed in exchange for stock or shares specifically issued for it; and that neither these clauses, nor clause (3) which relates to surplus, can be construed as including within the definition of invested capital any marking up of the valuation of assets upon the books to correspond with increase in market value, or any paper transaction by which new shares are issued in exchange for old ones in the same corporation, but which is not in substance and effect a new acquisition of capital property by the company.

"It is clear enough that Congress adopted the basis of 'invested capital' measured according to actual contributions made for stock or shares and actual accessions in the way of surplus, valuing them according to actual and bona fide transactions and by valuations obtaining at the time of acquisition, not only in order to confine the capital, the income from which was to be in part exempted from the burden of this special tax, to something approximately representative of the risks accepted by the investors in embarking their means in the enterprise, but also in order to adopt tests that would enable returns to be more easily checked by examination of records, and make them less liable to inflation than if a more liberal meaning of 'capital and surplus' had been adopted; thus avoiding the necessity of employing a special corps of valuation experts to grapple with the many difficult problems that would have ensued had general market values been adopted as the criteria.

"In view of the special language employed in section 207, obviously for the purpose of avoiding appreciated valuations of assets over and above cost, the argument that such value is as real as cost value, and that in the terminology of corporation and partnership accounting 'capital and surplus' means merely the excess of all assets at actual values over outstanding 'liabilities; and 'surplus' means the intrinsic value of all assets over

and above outstanding liabilities plus par of the stock, is beside the mark."

The above decision is directly in point and is decisive of this case.

The judgment should be and is affirmed.