**MASHUNKASHEY et al. v. CLINTON et al.**

No. 938.

District Court, N. D. Oklahoma.

July 1, 1935.

Harry Seaton and Henry Duncan, both of Tulsa, Okl., for complainants.

W. I. Williams and Phil W. Davis, Jr., both of Tulsa, Okl., for respondents.

FRANKLIN E. KENNAMER, District Judge.

This suit was instituted by Charles Mashunkashey, a restricted member of the Osage Tribe of Indians, and Maragret Mashunkashey, his wife, as his next friend. The respondent Fred S. Clinton was appointed guardian of the person and estate of Charles Mashunkashey by the county court of Tulsa county, Okl., on August 3, 1931. The respondent Fidelity & Casualty Company of New York executed a surety bond in the sum of $2,000 for the respondent Clinton, as required by law, and as fixed by appropriate orders of the county court of Tulsa county, Okl. Complainants allege that the respondent Clinton has been paid by the Secretary of the Interior restricted funds of complainant, Charles Mashunkashey, in the approximate amount of $35,000, which funds were paid to the respondent as guardian. It is alleged that the county court of Tulsa county was without authority and jurisdiction to appoint a guardian for Charles Mashunkashey, and that the respondent Clinton was without authority to collect or receive any restricted funds or property of the incompetent Osage Indian under the control and supervision of the Secretary of the Interior. It is further alleged that a purported accounting for said funds had been made by respondent Clinton in the county court of Tulsa county, Okl., but it is charged, by reason of want of jurisdiction, the respondent Clinton should account for such funds. The Act of Congress of February 27, 1925 (43 Stat. 1008), amendatory of Act of Congress of June 28, 1906 (34 Stat. 539), relating to Osage Indians, is pleaded as the basis for complainants' right to maintain the action. The congressional act provides that all funds and property received by a guardian of a member of the Osage Tribe of Indians, which was theretofore under the supervision and control of the Secretary of the Interior, or the title to which was held in trust for such Indian by the United States, shall not become divested of the supervision and control of the Secretary of the Interior, or the United States be relieved of its trust. It further provided that such guardian shall not sell, dispose of, or otherwise encumber such fund or property without the approval of the Secretary of the Interior, and in accordance with orders of the county court of Osage county, Okl. It is further alleged that the county court of Osage county has not authorized the receipt or disbursement of any of the restricted funds of Charles Mashunkashey, and that by reason thereof the respondent Clinton should account for all funds of complainant which came into his possession. The allottee plaintiff has died since this suit was commenced, and a special administrator has been substituted as complainant. Motions to dismiss have been interposed by the respondents.

It is insisted by movants that no federal question is involved; that no controversy about or interpretation of a federal law is involved in the case; and, further, that there is want of equity in the amended bill of complaint.

I am of the opinion that a federal question is presented. A case presents a federal question when it becomes necessary to construe the Constitution, laws, or treaties of the United States in order to decide the issue presented, or to decide as to the extent of some right, title, privilege, claim, or immunity asserted under the Federal Constitution and laws. In other words, when a plaintiff relies upon the laws of the United States, or where a recovery depends upon the construction of a law of the United States, a federal question is presented. See Lancaster v. Kathleen Oil Company, 241 U. S. 551, 555, 36 S. Ct. 711, 60 L. Ed. 1161, 1165; Wilson Cypress Company v. Del Pozo Y Marcos, 236 U. S. 635, 35 S. Ct. 446, 59 L. Ed. 758; Starin v. New York, 115 U. S. 248, 257, 6 S. Ct. 28, 29 L. Ed. 388; Ames v. Kansas, 111 U. S. 449, 462, 4 S. Ct. 437, 28 L. Ed. 482, 487; Cooke v. Avery, 147 U. S. 375, 385, 13 S. Ct. 340, 37 L. Ed. 209, 212; Bock v. Perkins, 139 U. S. 628, 650, 11 S. Ct. 677, 35 L. Ed. 314, 315. In the instant case, the right of recovery may be defeated by a construction of the federal statute, and a federal question is thus presented.

Complainants may maintain this action even though the United States of America, as guardian for restricted Indians, could also have maintained the ac-

458

tion. U. S. v. Equitable Trust Company, 283 U. S. 738, 51 S. Ct. 639, 75 L. Ed. 1379; Barnett v. Equitable Trust Company (C. C. A.) 34 F.(2d) 916.

■ A single question is presented in the case, and it is properly raised by respondents' motion to dismiss. If restricted funds of an incompetent member of the Osage Tribe of Indians can be disbursed only with the approval of the Secretary of the Interior, and in accordance with orders of the county court of Osage county, Okl., complainants are entitled to relief herein. On the other hand, if such funds may be disbursed by a guardian lawfully appointed by a county court of Oklahoma having jurisdiction to appoint such guardian, then complainants must fail in this suit.

The Supreme Court of the state of Oklahoma, has considered a question similar to the one here presented, involving congressional acts governing Osage Indians, and has concluded that the county court of Osage county does not have exclusive jurisdiction over estates of members of the Osage Tribe of Indians. In the decided case, the Act of Congress of April 18, 1912 (37 Stat. 86), was relied upon as granting exclusive jurisdiction to the county court of Osage county, to administer the estates of deceased allottees of the Osage Tribe of Indians in Oklahoma. That act requires that a copy of all papers filed in the county court in such proceedings shall be served on the superintendent of the Osage Agency at the time of filing. There is a proviso in section 7 of the Act (37 Stat. 88), to the effect that inherited moneys shall be liable for funeral expenses and expenses of last illness of deceased Osage allottees, "to be paid upon order of the county court of Osage County, State of Oklahoma." It was contended that since it was provided that such expenses were to be paid on order of the county court of Osage county, that that court alone had jurisdiction to administer the estates of deceased allottees of the Osage Tribe of Indians. However, the Supreme Court of Oklahoma held to the contrary, determining that the act of Congress did not grant sole power or jurisdiction to the county court of Osage county, Okl., to administer the estates of deceased allottees of the Osage Tribe, and construed the congressional act as containing clear language authorizing and empowering the county

courts of Oklahoma to administer the estates of such deceased allottees. State ex rel. Mudd v. County Court of Osage County, 168 Okl. 470, 34 P.(2d) 244. The Supreme Court, in considering the cited case, held that such expenses, to wit, funeral expenses and expenses of last illness, may be paid out of inherited moneys upon order of the county court of Osage county, without regard to the county court where the estate is being administered, or without any administration proceedings upon proof of death of the allottee. It was unnecessary for the Supreme Court to determine the possibility of such payment, in deciding whether the county court of Osage county alone had jurisdiction to administer the estates of deceased Osage allottees. I do not know of any procedure in the probate courts of Oklahoma wherein such payments should be made upon order of the county court of Osage county, if administration proceedings were not pending in that court. There is no procedure for obtaining orders in such courts unless proceedings, provided by statute, are instituted therein. The United States could have constituted the county court of Osage county, Okl., a federal instrumentality for the purpose of approving disbursements, but appropriate rules or legislative acts would have been necessary for proceedings thereunder. Certainly, Congress could not have conferred jurisdiction upon the county court of Osage county greater than fixed by the Constitution of the state of Oklahoma. It could not have given jurisdiction to administer estates of deceased allottees where the court otherwise did not have such jurisdiction. For instance, where the deceased was not a resident of Osage county and had no assets therein except his right to participate in the tribal funds of Osages, or where a deceased allottee, nonresident of the state of Oklahoma, died, and administration proceedings were first instituted in another county where the deceased left estate.

The Act of Congress of April 18, 1912 (37 Stat. 86), granted power and jurisdiction to the county courts of Oklahoma to administer the estates of deceased allottees, as well as to appoint guardians of allottees, of the Osage Tribe of Indians in Oklahoma. The act conferred jurisdiction upon the county courts of Oklahoma over Osage allottees. By

the same token, it could not confer jurisdiction upon the county court of Osage county to appoint guardians of Osage allottees where that court did not have such jurisdiction. It could not confer exclusive jurisdiction upon the county court of Osage county to appoint guardians of Osage allottees, and could not prevent the county courts of Oklahoma from exercising jurisdiction to appoint guardians, as conferred by the Constitution and laws of the state of Oklahoma.

The Act of Congress of February 27, 1925, amendatory of the Act of Congress of June 28, 1906, relating to Osage Indians, reimposed restrictions upon funds or property in the hands of guardians or members of the Osage tribe of Indians, which funds had been erroneously paid to such guardians. It also provided that such guardians shall not sell, dispose of, or otherwise encumber such funds or property without the approval of the Secretary of the Interior, and in accordance with orders of the county court of Osage county, Okl. In the instant case, the funds were paid to the respondent Clinton with the approval of the Secretary of the Interior. Upon his qualification as guardian appointed by the county court of Tulsa county, such funds were disbursed to him by the Secretary of the Interior. There is no procedure for obtaining an order of the county court of Osage county for the sale or disposition of restricted funds of an Osage allottee, where the county court of Osage county does not have jurisdiction of the estate of such allottee. The county court of Osage county does not have jurisdiction of the estate of such allottee. The county court of Osage county is without jurisdiction over matters and cases pending in the county court of Tulsa county. It cannot make a judicial order with respect to cases pending in the county court of Tulsa county, and no statutory procedure is in effect, and no rules have been adopted by which the county court of Osage county can perform an administrative act with respect to such funds where an estate is not being administered by that court. The Act of February 27, 1925, is amendatory of congressional acts relating to Osage Indians. It does not detract from the Congressional Act of April 18, 1912. It must be construed along with the earlier acts, and in my opinion those acts confer ju-

risdiction upon the county courts of Oklahoma to administer the affairs of Osage allottees, and they do not alter the jurisdiction of such probate courts, as Congress is without power so to do. The proper construction of the congressional act is that the funds of restricted Osage allottees shall be disposed of only with the approval of the Secretary of the Interior, and in accordance with the orders of the county courts of Oklahoma having jurisdiction of such allottees.

Complainants' amended bill of complaint alleges the appointment of the respondent Clinton as guardian of the person and estate of complainant Charles Mashunkashey, a restricted Osage allottee, and that restricted funds were turned over to such guardian by the Secretary of the Interior. In my opinion, the Secretary of the Interior had a right, under the law, to disburse such funds. The guardian appointed by the county court of Tulsa county, Okl., had authority to receive such funds, as such guardian, and complainants are not entitled to the relief sought in their amended bill of complaint.

The motions to dismiss will be sustained. It is so ordered.